# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TONIE M. SCRIMPSHIRE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 05-00124-WS-B** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Tonie M. Scrimpshire ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383c. This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on February 2, 2006. Upon careful consideration of the record, the undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED.**

## I.   Procedural History

Plaintiff filed her first application for supplemental security income benefits in October 2002, alleging that she became disabled at that time due to fibromyalgia,[1] depression, asthma, Adie's pupil

---

[1]Fibromyalgia is a term used to describe various disorders that are characterized by achy pain and stiffness in soft tissues, including muscles, tendons and ligaments. *The Merck Manual - Second Home Edition,* Sec. 5, Ch. 74, www.merckhomeedition.com/home.html. In Hennes v. Barnhart, 130 Fed. App. 343, n. 1 (11th Cir. 2005) (unpublished decision), fibromyalgia was defined as "a syndrome of chronic pain of musculoskeletal origin but uncertain cause[]" and it was noted that diagnostic criteria includes pain on both sides of the body and point tenderness in specified sites.

syndrome[2] and medication side effects.[3]  (Tr. 21, 63).  Plaintiff's application was denied at the initial

level; she did not appeal that decision.[4]  (Id. at 34-42).  Plaintiff filed a Request for Hearing and on

June 5, 2003, Administrative Law Judge Stuart A. Wein ("ALJ Wein" or "ALJ") conducted a

hearing which was attended by Plaintiff, her representative and a vocational expert.  (Id. at 43-44,

268-300).  On September 5, 2003, ALJ Wein entered an unfavorable decision, finding that Plaintiff

has the severe impairments of major depressive disorder and gastroesophageal reflux disease

("GERD"), but that her alleged fibromyalgia is not supported by the medical evidence as a whole.

(Id. at 17-27).  The ALJ determined that Plaintiff's impairments do not meet or medically equal the

Listings and that she can perform work existing in significant numbers such as cleaner/housekeeper,

laundry attendant and garment bagger.  (Id.)  On December 30, 2004, Plaintiff's request for review

was denied by the Appeals Council ("AC"); thus, the ALJ's decision became final under 20 C.F.R.

§ 404.955.  (Id. at 5-7, 14-15).  The parties agree that this case is now ripe for judicial review and

is properly before this Court pursuant to 42 U.S.C. § 405(g).

---

[2]Adie or Adie's Syndrome is a rare neurological disorder affecting the pupil of the eye which makes the pupil dilated (larger than normal) and slow to react to light on nearby objects. The pupil may also, instead, be constricted (smaller than normal). Absent/poor reflexes are also associated with this disorder.  See www.webmd.com (last visited 9/20/06).

[3]At the June 5, 2003 hearing, Plaintiff amended her alleged onset of disability date from October 1989 to October 2002.  (Id. at 271).

[4]The application was treated as a prototype case and as such, the reconsideration stage was eliminated pursuant to 20 C.F.R. § 404.906.

## II.   **Factual Background**

Plaintiff was born on September 1, 1958, and was 44 years old at the time of the administrative hearing. (Tr. 274). She reported that she has an 8th grade education; has difficulty with simple reading, writing and math; and that she has no vocationally relevant past work experience.[5] (Id. at 274-275, 294-295). Plaintiff testified that she is unable to work due to "a lot of different things[,]" including bad "nerves" (Id. at 278). Additionally, Plaintiff testified that she suffers from fibromyalgia, and that since her car accident in 2002, it has worsened. (Id. at 280-281). Plaintiff reported hurting the most with muscle spasms in her chest, neck, hips, knees and elbows that feel like "big knots swell up" and produce "real bad pains" that come and go "like a labor pain." (Id.) Plaintiff further testified that the fibromyalgia makes her elbows swell and creates "knots" in different places, with pain becoming severe in her arms, and that she receives Cortisone injection shots to relieve this pain. (Id. at 284-285). Moreover, Plaintiff testified that she suffers from asthma and uses a breathing machine at home. (Tr. 282). Plaintiff also reported migraines, mesangial reflux, a hernia at the top of her stomach and Adie's pupil syndrome. (Id. at 283-284, 288-293).

Regarding her daily activities/routine, Plaintiff reported that she spends most of her day resting in her house. (Id. at 286-287, 294). According to Plaintiff, her mother, oldest daughter, and former mother-in-law assist her with household chores, such as cooking, shopping and washing clothes. (Id. at 286). Plaintiff indicated that a typical day for her consists of taking her medicine, eating breakfast and napping off and on. (Id. at 286-287). She reported that she no longer has any hobbies or social activities, and does not attend church or visit others outside her home. (Id. at 287).

## III.   **Issues On Appeal**

---

[5]She last worked as a copier, for one week. (Id. at 276, 280). She also tried to work as a housekeeper in the late 1990s but was unable to do so. (Id. at 287).

A.      Whether the ALJ erred by failing to find that Plaintiff's fibromyalgia is a severe impairment?

B.      Whether the ALJ erred by failing to consider the effects of Plaintiff's impairments (namely fibromyalgia), both severe and non-severe, singularly and in combination, on her ability to work?

**IV.     Analysis**

     **A.     Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[6] A court may not decide the facts anew, rough the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

---

[6]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

B.    **Discussion**

An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[7] See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the case sub judice, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity, is a younger individual, has a limited education and has no past relevant work.  (Tr. 26, Findings 1, 7-8).  The ALJ also found that Plaintiff suffers from the impairments of major depressive disorder and GERD, which are severe under the Act.  (Id., Finding 2).  The ALJ further determined that these impairments do not meet or medically equal one of the Listings.  (Id., Finding 3).  The

---

[7]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

ALJ determined as well, that Plaintiff's allegations regarding her limitations were not totally credible, and that she is capable of performing various jobs in the national economy such as cleaner/housekeeper, laundry attendant and garment bagger.  (Id., Findings 4, 9).

Upon a careful review of the record, the undersigned finds that the ALJ's decision is supported by substantial evidence.  The record reflects that from March 1999 through August 2001, Plaintiff sought medical treatment for various complaints, including sore and swollen joints, persistent pain, weakness, breathing problems, chest pain, gastroesophageal pain, headaches and sleeping problems from Teresa Oglesby, M.D. ("Dr. Oglesby"), Alan R. Shain, M.D. ("Dr. Shain"), and H. Morgan Ashurst, M.D. ("Dr. Ashurst").  (Tr. 109-127, 222-236).  Dr. Oglesby's notes reflect that Plaintiff had multiple trigger areas and mild bilateral proximal interphalangeal (finger) swelling. (Id. at 109-127).  Dr. Oglesby diagnosed Plaintiff with antropathy, myalgia, muscle cramps, arthralgia, early signs of osteoarthritis, and intermittent gastrointestinal complaints with a history of hiatal hernia. (Id.) Dr. Oglesby prescribed Celebrex, Lasis, Klonopin, Pamelor and Prevacid, and Plaintiff reported that her gastrointestinal problems responded well to Prevacid and that Celebrex helped the swelling and arthralgia.  (Id.)  Drs. Shain and Ashurst diagnosed Plaintiff with fibromyalgia, generalized edema, asthma, panic attacks and GERD.  (Id. at 222-236).  They prescribed Lasix, Prevacid, Pamelor, Zantac and Albuterol.  (Id.)

Beginning in December 2001, Plaintiff was treated by Donald Newman, M.D. ("Dr. Newman") for various complaints including arthralgia, shortness of breath, migraine headaches, nausea, neck pain, weakness, and muscle spasms.  (Tr. 139-145, 189-190).  Physical examinations of Plaintiff showed no significant edema, full range of motion, supple neck and no neurological deficits.  (Id. at 143-145).  Dr. Newman's treatment records reflect that Plaintiff had a history of

fibromyalgia, and that the "work-up" was negative.  (Id.)  During 2001-2002, Dr. Newman repeatedly diagnosed Plaintiff with fibromyalgia, asthma, GERD, arthralgia, migraine headaches and muscle spasms.  (Id. at 142-145).

During a June 11, 2002 office visit, Plaintiff reported that she had been involved in a motor vehicle accident the day before, and complained of back pain.  (Id. at 142).  Dr. Newman noted that Plaintiff had a history of fibromyalgia; his physical examination revealed that she had a supple neck, pretty good range of motion, good strength in upper extremities, tenderness to palpation of the lower back and negative straight leg raising tests.  (Id.)  During July-August 2002, Plaintiff reported having muscle spasms in her neck, migraine headaches, low back pain, neck pain, sinusitis, nausea, anxiety and depression.  (Tr. 139-141, 189).  Dr. Newman's treatment notes reflect that physical examinations of Plaintiff revealed that she had a supple neck with "little tenderness" and "some" muscle spasms, no neurological deficits, good strength to lower extremities, normal reflexes and negative straight leg raising tests.  (Id.)  Dr. Newman opined that Plaintiff was improving slowly, and he continued her on Flexeril and Vicodin.[8]  (Id. at 139, 189).

Treatment notes from Dr. Newman from December 2002 and January 2003 indicate that Plaintiff was diagnosed with asthma, GERD, tendonitis of the elbow, and possible carpal tunnel of the right wrist.  (Id. at 189).  Physical examinations revealed a supple neck, clear lungs, tenderness to palpation of the right elbow and wrist, and a pretty good range of motion of her back and upper extremities.  (Id.)

---

[8]Plaintiff was also referred to Mobile Mental Health. (Id. at 140-141).  She received treatment from October 15, 2002 through April 15, 2003.  (Id. at 147-148, 176-187).  The impression was listed as: major depression (chronic, recurrent) and rule out mood disorder due to general medical condition (Axis I); depression (Axis II); fibromyalgia, asthma, GERD and Adie's pupil syndrome (Axis III); and 60 GAF (Axis IV).  (Id. at 183).

Progress notes from the Internal Medicine Center from March-May 2003 indicate that Plaintiff received injections for elbow pain and that her asthma and migraines were controlled with medication.  (Id. at 215-222).   On March 15, 2003, Plaintiff was hospitalized at the Mobile Infirmary, after cutting grass, with complaints of chest pain and shortness of breath, with "left chest ache constant."  (Tr. 240-247).  Her chest x-rays were normal.  (Id. at 246).  Plaintiff's past history was noted to include asthma, hypertension, chronic chest spasms and fibromyalgia.  (Id. at 242). Upon physical examination, her extremities were found to be nontender, she had a normal range of movement and she had no pedal edema.  (Id. at 242-243).  Plaintiff was discharged with acute dyspnea, asthma-acute exacerbation and chronic chest wall pain.  (Id. at 243).

From May 8-13, 2003, Plaintiff was hospitalized at Mobile Infirmary Medical Center due to chest discomfort with severe nausea and discomfort radiating into the left side of her neck, down her left arm and into her leg.  (Id. at 248-258).  At the end of her stay, she had a bad episode of chest pain and Dr. Shain noted that she may have more asthma/emphysema than previously realized, as she has dyspnea with minimal exertion.  (Tr. 254).  Her final assessment, upon discharge, was chest pain, non-cardiac, angina pectoris and being a heavy smoker.  (Id. at 248-258).

Dr. Ashurst's treatment notes for May 27, 2003 reflect that Plaintiff had been assessed with asthma, tennis elbow, panic disorder, fibromyalgia, Adie's pupil syndrome, history of smoking and irritable bowel syndrome.  (Id. at 218).   The notes further reflect that Plaintiff requested the completion of a physical capacities evaluation form, but that Dr. Ashurst declined to do so, and instead referred her to the "Springhill Rehab" for completion of the form.  (Id.)  Dr. Ashurst injected her right elbow and added Effexor to her medications.

Turning now to the issues on appeal, Plaintiff first contends that the ALJ erred by failing to

find that she suffers from the severe impairment of fibromyalgia. As noted supra, the ALJ concluded that "the claimant's alleged fibromyalgia is not support by the medical evidence as a whole[.] The records contain a few scant references to a diagnosis of fibromyalgia by history; however, there are no objective studies in the record, such as t[r]igger point testing, to confirm such diagnosis." (Tr. 23-24). Where as here, a plaintiff is not involved in substantial gainful activity, the Commissioner "determines whether a claimant has a 'severe' impairment or combination of impairments that causes more than a minimal limitation on a claimant's ability to function." Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). A plaintiff bears the burden of proving that she has a severe impairment or combination of impairments. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). The Eleventh Circuit, in McDaniel v. Bowen, 800 F. 2d 1026 (11th Cir. 1986) explained that:

> [a]t step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe. Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

Id. at 1031. Accordingly, "an impairment or combination of impairments is not severe if it does not significantly limit . . . [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). See also Crayton, 120 F.3d at 1219.

Substantial evidence supports the ALJ's finding that Plaintiff's fibromyalgia does not constitute a severe impairment. The ALJ was mistaken in finding that there was no trigger point testing, as the record reflects that Dr. Oglesby, who treated Plaintiff from 1999 through 2001, noted multiple trigger areas during her examinations; however, she never diagnosed Plaintiff with fibromyalgia, nor did she impose any restrictions upon Plaintiff. See supra. Moreover, while Dr.

Shain and Dr. Ashurst did diagnose Plaintiff with fibromyalgia beginning in the 1998/1999 timeframe, their treatment notes relating to her onset date of October 2002 and thereafter, contain scant references to fibromyalgia. (Tr. 214-222). Their treatment records for the relevant period do not contain any trigger point testing or other signs or symptoms to substantiate the diagnosis. (Id.) Nor do their treatment records reflect that the condition limited Plaintiff in any way.[9] (Id.) In fact, when Plaintiff requested that Dr. Ashurst complete a physical capacities evaluation, he declined to do so. (Id. at 218). Clearly, a diagnosis alone is not sufficient to constitute a severe impairment. See, e.g., Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211-1212 (M.D. Ala. 2002) (providing that a diagnosis alone is "an insufficient basis for finding that an impairment is severe[]"). See also e.g., McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); SSR 96-3p. Accordingly, based upon a review of the record evidence, the undersigned finds that the ALJ did not err in concluding that Plaintiff's fibromyalgia did not constitute a severe impairment. See, e.g., Daughtry v. Barnhart, 347 F. Supp. 2d 1135 (M.D. Ala. 2004).

Plaintiff also alleges that the ALJ did not consider her impairments in combination; however, she has failed to point to any evidence to support her contention. In his decision, the ALJ detailed Plaintiff's various impairments and discussed the medical evidence related thereto. (Tr. 20-27). He also determined that Plaintiff has an impairment or a combination of impairments considered severe, and that they did not meet or medically equal one of the listed impairments. (Id.) The ALJ concluded, "[b]ased upon a thorough review of the entire record . . . [that] the claimant retains the

---

[9]Similarly, in his June 2002 treatment notes (Id. at 142), Dr. Newman noted that Plaintiff has a "history of fibromyalgia;" however, his treatment records for the relevant time period do not include a current assessment of fibromyalgia or any trigger point testing, or other signs supportive of such a diagnosis. Likewise, while Plaintiff was hospitalized twice during 2003, the records do not demonstrate that she was diagnosed with, or treated for, fibromyalgia. (Id. at 195-211, 240-258).

following residual functional capacity: she has no physical limitations; however, the claimant has moderate deficits in understanding and carrying out detailed instructions; moderate concentration deficits; moderate deficits interacting with the general public; and moderate deficits adapting to work place stress."  (Id. at 24).

"Where a claimant has alleged several impairments, the [Commissioner] . . . has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Jones v. Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam).  Indeed, an ALJ is required to address "the degree of impairment caused by the combination of physical and mental medical problems." Strickland v. Harris, 615 F.2d 1103, 1110 (5th Cir. 1990).  With respect to the combination of impairment analysis, the Eleventh Circuit has held that the ALJ properly considered the claimant's impairments in combination when he stated that, "based upon a thorough consideration of all the evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months." Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (emphasis in original).  Although the ALJ in the instant case did not use these precise words in his decision, a review of his decision demonstrates that he considered all of the evidence, as well as the combined effects of Plaintiff's impairments.  Accordingly, the ALJ did not err in this regard.

## V.    <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record, it is the recommendation of the undersigned Magistrate Judge that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income benefits, be

**AFFIRMED.**

The attached sheet contains important information regarding objections to this <u>Report and Recommendation</u>.

**DONE** this **20**th day of **September, 2006.**

        <u>  /s/ SONJA F. BIVINS                            </u>
        **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.     **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/**SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**